# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHIGAN CATASTROPHIC
CLAIMS ASSOCIATION,

    Plaintiff,

v.

STEADFAST INSURANCE
COMPANY,

    Defendant.

Hon. _____

Case No. 1:19-cv-394

_____

Scott R. Knapp (P61041)
Nolan J. Moody (P77959)
DICKINSON WRIGHT PLLC
215 S. Washington Square, Suite 200
Lansing, MI  48933
(517) 371-1730
sknapp@dickinsonwright.com
nmoody@dickinsonwright.com

*Attorneys for Plaintiff*

_____

## COMPLAINT

NOW COMES Plaintiff, the Michigan Catastrophic Claims Association (the "MCCA"), by and through its attorneys, Dickinson Wright PLLC, and for its Complaint against Defendant Steadfast Insurance Company ("Steadfast"), hereby states:

## THE PARTIES

1.      The MCCA is an unincorporated, nonprofit association created by the No-Fault Insurance Act.  M.C.L. 500.3104.  The MCCA's business address is 17584 N. Laurel Park Drive, Suite 350, Livonia, Michigan 48152.

2.      Under Michigan's unique no-fault insurance law, automobile insurance companies must write policies that provide for unlimited lifetime medical benefits. M.C.L. 500.3101, *et seq.*

3.      By statute, the MCCA provides what is functionally reinsurance to automobile insurers.  That is, automobile insurers that provide "personal protection insurance coverages," i.e., no-fault insurance, must be members of the MCCA, and pay premiums thereto.  *See* M.C.L. 500.3104(1) ("Each insurer engaged in writing [no-fault] insurance coverages…shall be a member of the [MCCA] and shall be bound by the plan of operation of the [MCCA].").  In return, the MCCA is required to indemnify such members for losses (over a certain threshold), on an unlimited basis, resulting from such coverages.  *See* M.C.L. 500.3104(2) ("The [MCCA] shall provide and each member shall accept indemnification for 100% of the amount of ultimate loss sustained under personal protection insurance coverages in excess of the following amounts….").

4. The MCCA has the statutory right to sue to enforce the terms of the MCCA enabling statute and the MCCA's Plan of Operation. M.C.L. 500.3104(8)(a), (d), (g).

5. As relevant here, Steadfast is a surplus lines insurance carrier. Steadfast's business address is 1400 American Lane, Schaumburg, Illinois 60196-1056.

## JURISDICTION

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## VENUE

7. Because Steadfast contracted to insure a person, property and/or risk located within this District, venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### a. The MCCA and the TNC Act

8. As stated above, the MCCA is a creature of statute. In simple terms, auto insurance carriers that provide "personal protection insurance" ("no-fault insurance") must belong to and be members of the MCCA. M.C.L. 500.3104(1).

9. Such carriers must pay a premium to the MCCA, as established by statute. *See* M.C.L. 500.3104(7)(d).

10. In the event there is a catastrophic claim against the carrier, the MCCA is required to indemnify the carrier for all losses above a statutory threshold. For policies written between July 1, 2015 and June 30, 2017, the threshold was $545,000; for policies written between July 1, 2017 and June 30, 2019, the threshold is $555,000. The benefits to the injured party can be of unlimited duration and amount.

11. Pursuant to the statutory scheme, and via membership in the MCCA, auto insurers (particularly smaller ones) are protected from potential economic ruin which may result from paying such catastrophic claims.

12. In recent times, the commercial transportation industry has been revolutionized by the advent of companies such as Uber and Lyft. Such entities, called transportation network companies ("TNCs"), utilize a digital network to match TNC drivers – using their own automobiles – with consumers seeking to hire them.

13. Recognizing the need to regulate TNCs, on March 21, 2017, the Michigan Legislature enacted the Limousine, Taxicab, and Transportation Network Company Act (the "Act"), M.C.L. 257.2101, *et seq*. The Act defines a TNC as an

entity "operating in this state that uses a digital network to connect [TNC] riders to [TNC] drivers who provide [TNC] prearranged rides." M.C.L. 257.2102(l).

14. The Act defines a TNC "prearranged ride" as "the provision of transportation by a [TNC] driver to a [TNC] rider, beginning when a [TNC] driver accepts a ride requested by a [TNC] rider through a digital network controlled by a [TNC], continuing while the [TNC] driver transports the requesting [TNC] rider, and ending when the last requesting [TNC] rider departs from the personal vehicle." M.C.L. 257.2102(o).

15. A TNC must be registered with the Michigan Department of Licensing and Regulatory Affairs. M.C.L. 257.2104(l). To obtain that registration, the TNC must, *inter alia*, present proof that it has satisfied the insurance requirements under the Act. M.C.L. 257.2104(5).

16. Section 23 of the Act delineates, *inter alia*, the TNC's insurance requirements. M.C.L. 257.2123. Beginning March 21, 2017, i.e., the effective date of the Act, the TNC and/or the TNC driver must maintain primary automobile insurance on a vehicle used by the TNC driver. M.C.L. 257.2123(1).

17. More specifically, during the time a TNC driver "is logged on to the [TNC's] digital network and is available to receive transportation requests but is not engaged in a TNC prearranged ride," and when a [TNC] driver "is engaged in a [TNC] prearranged ride," the following types of automobile insurance are required:

5

"[r]esidual third party automobile liability insurance" and "[p]ersonal protection insurance and property protection insurance in the amounts and of the types of coverage required by … M.C.L. 500.3101 to 500.3179." M.C.L. 257.2123(2), (2)(a), (2)(b), (3), (3)(a), and (3)(b).

18.  These insurance requirements may be satisfied by automobile insurance maintained by a TNC driver or by a TNC, or a combination of both. M.C.L. 257.2123(4). If the required insurance lapses or does not provide the required coverage, insurance maintained by a TNC "shall provide the coverage required by this section, beginning with the first $1.00 of a claim, and the TNC's insurer shall defend the claim." M.C.L. 257.2123(5).

19.  As relevant here, the insurance referenced above may be placed with a Michigan authorized insurer "or, if the insurance is maintained by a [TNC], an eligible unauthorized insurer under chapter 19 of the insurance code … M.C.L. 500.1901 to 500.1955." M.C.L. 257.2123(7)(a).

### b.  Steadfast provides no-fault insurance to a TNC, and is thus a member of the MCCA

20.  Lyft, a TNC operating in Michigan, secured the insurance required under the Act, including no-fault insurance, from Steadfast. Steadfast, as a foreign (non-admitted) surplus lines carrier, is an "eligible unauthorized insurer" under the

insurance code. The Act permits Steadfast to insure Lyft's no-fault obligations under the Act. *See* M.C.L. 257.2123(7)(a).

21. Historically, only Michigan authorized insurers could write Michigan no-fault insurance and, thus, members of the MCCA have historically been authorized Michigan insurers. However, the Act creates a narrow exception for TNCs seeking the insurance coverages (including no-fault) required under the Act. That is, the Act expressly permits an "unauthorized insurer" to write no-fault insurance for TNCs. M.C.L. 257.2123(7)(a).

22. A dispute arose between the MCCA and Steadfast as to whether, as an "unauthorized insurer" writing no-fault insurance under the authority granted by the Act, Steadfast was required to be a member of the MCCA. In an effort to resolve that dispute, the parties sought guidance from the Director of Michigan's Department of Insurance and Financial Services ("DIFS").

23. On July 30, 2018, DIFS Director Patrick M. McPharlin wrote to the Executive Director of the MCCA, R. Kevin Clinton, addressing that precise issue, and concluded "that a surplus lines insurer that provides coverage to a TNC must become a member of the MCCA." *See* July 30, 2018 Letter, attached as **Exhibit 1**. More specifically, the DIFS Director stated:

> The [Act], MCL 257.2101, *et seq.*, expressly provides that an eligible unauthorized insurer (i.e. a surplus lines insurer) may provide no-fault coverage to a TNC.… *See* MCL 257.2123(7)(a). The required no-fault coverage is described in MCL 257.2123(3).…
>
> Section 3104(1) of the Insurance Code provides that "[e]ach insurer engaged in writing insurance coverages that provide the security required by Section 3101(1) [i.e., no-fault auto coverage] within this state, as a condition of its authority to transact insurance in this state, shall be a member of the [MCCA]…." MCL 500.3104(1). Although surplus lines insurers are not, by definition, "authorized to transact insurance in this state," *see* MCL 500.1903(1)(a), the inclusion of that condition in Section 3104(1) does not negate their authority to provide no-fault insurance to TNCs, nor does it supersede the requirement that they must become MCCA members.…
>
> **In summary, a surplus lines insurer that provides coverage to a TNC as permitted under the TNC Act, MCL 257.2123(7), is providing the security required by Section 3101(1) of the Code, MCL 500.3101(1), and is required to be a member of the MCCA.**

*Id.* (emphasis added).

24. The Act authorizes a surplus lines carrier such as Steadfast (an otherwise statutory "unauthorized insurer") to engage in the writing of no-fault insurance for TNCs. And when Steadfast wrote no-fault insurance for Lyft, Steadfast's membership in the MCCA immediately became mandatory.

### c.  Steadfast fails to fulfill its mandatory obligations as a member of the MCCA

25. Steadfast began providing no-fault insurance to Lyft on March 21, 2017. *See* Certificate of Liability Insurance, attached as **Exhibit 2**. Steadfast became a member of the MCCA – entitled to the rights and benefits of membership,

8

and obligated to fulfill the duties of same – on March 21, 2017 (the effective date of the Act, and the date Steadfast began providing no-fault coverage to Lyft).

26. Steadfast claims it ceased providing no-fault insurance coverage to Lyft on October 1, 2018.

27. Steadfast was required to pay to the MCCA premiums for the period March 21, 2017 to October 1, 2018 (the "Relevant Period").

28. The MCCA was and is required to provide the indemnification required by statute, as to any catastrophic claims for which Steadfast is liable, and which occurred during the Relevant Period.

29. The MCCA has acknowledged its mandatory indemnification responsibility.

30. However, Steadfast has refused to pay the statutorily-mandated premiums for the Relevant Period.

31. An insurer engaged in writing no-fault insurance "shall be a member of the [MCCA] and shall be bound by the [P]lan [of Operation] and…all unpaid premiums…are payable as of the effective date of the withdrawal." M.C.L. 500.3104(4). A copy of the Plan of Operation (the "Plan") is attached as **Exhibit 3**.

32. An insurer may withdraw from the MCCA only upon ceasing to write insurance that provides no-fault coverage. M.C.L. 500.3104(3).

33. An insurer whose membership in the MCCA has been terminated by withdrawal shall continue to be bound by the Plan and, upon withdrawal, all unpaid premiums that have been charged to the withdrawing member are payable as of the effective date of the withdrawal. M.C.L. 500.3104(4); Plan at §5.03.

34. The MCCA is required to calculate and charge to members of the MCCA a total premium sufficient to cover the expected losses and expenses of the MCCA that the MCCA will likely incur during the period for which the premium is applicable. The premium shall include an amount to cover incurred but not reported losses for the period and may be adjusted for any excess or deficient premiums from previous periods. Excesses or deficiencies from previous periods may be fully adjusted in a single period or may be adjusted over several periods in a manner provided for in the Plan. Each member shall be charged an amount equal to that member's total written car years of insurance providing the security required by M.C.L. 500.3101(1) or 3103(1), or both, written in this state during the period to which the premium applies, multiplied by the average premium per car. The average premium per car shall be the total premium calculated divided by the total written car years of insurance providing the security required by M.C.L. 500.3101(1) or 3103(1) written in this state of all members during the period to which the premium applies. M.C.L. 500.3104(7)(d).

35. If a member of the MCCA can determine its written car years, it must do so. *See* Plan at §4.03(h).

36. If a member uses some other unit of exposure besides written car years, the member must use a reasonably verifiable manner for determining a written car year equivalent. *Id*.

37. Steadfast has refused to provide the MCCA with its written car years, or written car year equivalent calculation, necessary for the MCCA to calculate and charge the required premium to Steadfast.

38. Ordinarily, the MCCA charges to each member a Preliminary Premium Assessment, which is a function of the member's prior-year premium. *See* Plan at §9.02. The MCCA then charges a Final Premium Assessment at the end of the year, based upon certain actual data from the carrier. *Id*. at §9.03. Here, however, Steadfast has never paid any premium, and has not provided to the MCCA the information from which the MCCA could itself calculate same.

39. Thus, the total amount of premium owed by Steadfast to the MCCA for the Relevant Period is presently unknown. However, upon information and belief, the total premium owed is in the millions of dollars.

40. If a member of the MCCA fails to timely pay its premium, fails to report its written car years, or fails to perform any duty owed to the MCCA under the Plan,

the MCCA may institute legal action, and charge interest on past due amounts.  *See* Plan at §11.01.

    41.    All legal and other expenses incurred by the MCCA, as a result of a member's default, shall be paid by the member.  *See* Plan at §11.01.

## COUNT I
## (Declaratory Judgement)

    42.    The MCCA realleges the previous paragraphs of this Complaint, as if fully restated here.

    43.    There exists an actual controversy between the MCCA and Steadfast as to whether Steadfast, in writing no-fault insurance for Lyft (a TNC), is a mandatory member of the MCCA.

    44.    Under the express terms of the TNC Act and the MCCA enabling statute, M.C.L. 500.3104, and because Steadfast "engaged in writing insurance coverages that provide the security required by Section 3101(1) within this state," Steadfast was required to be a member of the MCCA.  *See* M.C.L. 500.3104(1) and M.C.L. 257.2123(7)(a).  The Director of DIFS has reviewed the facts and applied the Act and the MCCA enabling statute, and reached the same conclusion.  *See* Exhibit 1.

    45.    The MCCA requests that this Court resolve the controversy, and declare the rights and legal relations of the parties. Specifically, the MCCA requests that this

Court enter a judgment declaring that Steadfast is a mandatory member of the MCCA during the Relevant Period, and until it satisfies the requirements of withdrawal from membership.

## COUNT II
### (Breach of Duties Under the No-Fault Statute and the MCCA's Plan of Operation)

46. The MCCA realleges the previous paragraphs of this Complaint, as if fully restated here.

47. As a member of the MCCA, Steadfast had mandatory duties, *inter alia*, to provide to the MCCA requested information, and to pay to the MCCA the statutorily required premium during the Relevant Period. As set forth above, such duties are enumerated in the MCCA enabling statute and/or the Plan.

48. Steadfast has refused to pay the full amount of its statutorily-required premium for the Relevant Period.

49. Steadfast has refused to provide to the MCCA information that would enable the MCCA to compute the amount of premium owed.

50. Steadfast's refusals constitute a violation of statutory duty and/or a breach of the Plan.

51. Steadfast's violation/breach has caused damages to the MCCA, in that the MCCA has assumed its obligatory indemnification risk associated with

Steadfast's writing of Lyft's no-fault insurance without concomitantly receiving a premium for assuming that risk.

52. In addition to the statutorily-required premium for the Relevant Period, the MCCA is entitled, under the Plan, to interest at 1% per month, and all attorneys fees, costs and expenses resulting from this dispute. *See* Plan at §§11.01 and 11.02.

WHEREFORE Plaintiff, the Michigan Catastrophic Claims Association, hereby requests that this Honorable Court enter judgment against Defendant Steadfast Insurance Company as to the claims here asserted, and grant to the MCCA the following relief:

    a. A declaration that Steadfast is a member of the MCCA beginning March 21, 2017;

    b. Damages, including but perhaps not limited to all unpaid premium during the Relevant Period;

    c. Interest, per the Plan of Operation and statute, at a rate of 1% per month;

    d. Attorneys fees, costs and expenses per the Plan of Operation and statute; and

  e.  Such other and further relief as the Court may determine to be just and equitable.

Dated:  May 17, 2019

                Respectfully submitted,

                <u>s/ Scott R. Knapp</u>
                Scott R. Knapp (P61041)
                Nolan J. Moody (P77959)
                DICKINSON WRIGHT PLLC
                215 S. Washington Square, Suite 200
                Lansing, MI  48933
                (517) 371-1730
                sknapp@dickinsonwright.com
                nmoody@dickinsonwright.com

                *Attorneys for Plaintiff*

LANSING 87602-1 542437